## Hunter *against* Albright.

If interfering tracts of unseated land be severally assessed with taxes, and sold by the treasurer, the respective titles of the purchasers will be governed by the superiority of the original title.

If the commissioners of the county become the purchaser of an unseated tract of land, which in its original location and survey interferes with another warrant and survey, and they afterwards assess a tax upon this other tract of land and issue a warrant to the treasurer to sell it, such sale will confer a good title upon the purchaser, to the whole tract as originally surveyed.

ERROR to the Common Pleas of *Perry* county.

This was an action of ejectment brought by Samuel Albright against John Hunter and James Hunter, for 200 acres of land, in which the defendants took defence for 70 acres. The plaintiff's title was a warrant to John Little of the 28th December 1774, for 200 acres, upon which a survey was made on the 12th March 1775, and duly returned. The land was taxed in the name of William Rawle for the years 1834–5 as unseated, and sold on the 11th June 1838 to Samuel Albright, the plaintiff.

The defendants' title was a warrant to Michael Capp of the 7th June 1785, for 100 acres, upon which a survey was made on the 27th October 1785, and duly returned. This survey interfered with and included 70 acres of the former survey of John Little—and this was the land in dispute. The tract in the name of Michael Capp was assessed with taxes for the years 1821–2–3, as unseated, and on the 14th October 1830 was sold by the treasurer and purchased by the commissioners, who, on the 11th June 1838 sold the same to John Thomas, who conveyed to the defendants.

The court below (HEPBURN, President,) instructed the jury, that the plaintiff was entitled to recover.

*Reed*, for the plaintiff in error, argued, that the sale of the land in 1830 to the commissioners, vested a good title without regard to the name in which it was sold, which, after the lapse of five years became absolute:—that it was not subject to taxation in 1834–5, while it was the property of the county, and, therefore, the plaintiff's title was void. 4 *Watts & Serg.* 251; 10 *Watts* 208; 1 *Watts & Serg.* 174.

*Watts*, contra, contended, that the sale to the commissioners vested in the county the title to so much land only as was legally appropriated upon the warrant and survey of Capp, for no greater quantity of land could be assessed, taxed or sold than was legally

covered by it; and it was perfectly competent for the commissioners to assess a tax and sell the tract surveyed upon the Little warrant, thereby restricting their own purchase to the quantity which legitimately belonged to it. Both sales are good, and confer title upon the respective purchasers to an extent measured by the rights of the original owners or claimants. The plaintiff, therefore, claiming under the elder title, was entitled to recover. But, even if the sale to the commissioners gave title to the whole survey in the name of Capp, they having subsequently assessed a tax upon and sold the tract surveyed in the name of Little, would be estopped from asserting title to any part of the land embraced within it.

The opinion of the Court was delivered by

KENNEDY, J.—The counsel for the plaintiffs in error admit, that the title to the land in controversy, which originated under the Little warrant and survey, was better than, and superior to any that could be claimed under the Capp warrant and survey, but as it was not the title that was taxed, nor yet the owner of it, but the land described in the assessment, without regard to the title under which it might be held or claimed, and as the first assessment of taxes and sale by order of the commissioners on account thereof passed the title, no matter in whom it was vested, to the purchaser at that sale, and as the defendants have become the assignees of the first purchasers, they must therefore be considered as entitled to hold the land. For this, the counsel of the defendants relies on the 4th section of the Act of 3d of April 1804, and the case of *Strauch v. Shoemaker*, (1 *Watts & Serg.* 166). The 4th section of the Act declares, that " sales of unseated lands for taxes that are now due, or that may hereafter become due thereon, made agreeably to the directions of this Act, shall be in law and equity valid and effectual to all intents and purposes, to vest in the purchaser or purchasers of lands sold as aforesaid, all the estate and interest therein that the real owner or owners had at the time of such sale, although the land may not have been taxed or sold in the name of the *real* owner thereof." And in the case of *Strauch* v. *Shoemaker*, it was held by this court, that an unseated tract of land taxed in the name of one who had previously had an inceptive title to it, which, however, had ceased long before by an abandonment of it, or neglect on his part to perfect it, and sold by order of the commissioners of the county on account of the same, vested in the purchaser at such sale, the title of the real owner who held it by a purchase from the Commonwealth. There can be no doubt, that the Legislature intended by the 4th section of the Act of 1804, to make the sale valid and effectual, so as to devest the real owner of the land of his right to it, whether taxed in his name or that of any other person who had a claim to it then or at any former period, or in whose name the title existed then or previously.

[Hunter v. Albright.]

But, whether it was intended. to devest the real owner of his right, if taxed and sold in the name of one who never had had a claim of any kind to the land, or whose name had never been connected with the title to it in any way, may possibly admit of some doubt: for the words of the section are " although the land may not have been taxed or sold in the name of the real owner thereof." The use of the word " real" may raise the question, with some at least, whether it was not inserted for the purpose of making the section applicable to cases only, where the land happened to be taxed or sold in the name of those who at the time or previously had a defective claim to it, or who had been the real owners, but had parted with their right, or whose names, without being the real owners, had been connected with the title as trustees; for otherwise, why insert the word " real" at all, as the section would have embraced those who had never pretended a claim to the land, or whose name had never been connected with the title to it, more precisely, clearly and certainly without the insertion of it. And this would seem to receive countenance also from the 1st section of the same Act, which directs the deputy-surveyors, upon the application of the commissioners, to make out, on oath or affirmation, a correct return of all the lands surveyed within their respective counties, which returns shall include a list of the number of acres contained in each and every warrant, and the *names* and *surnames* of the original warrantees; and it is also made the duty of the county commissioners, to provide and keep a suitable book or books, in which they shall cause such returns to be entered. And again, by the 2d section, it is provided, that all unseated lands shall be valued and assessed in the *same manner* as other property; which may have reference to its being assessed in the *names* of the *owners* thereof, as other property is assessed; and comes to the conclusion, that the sales of such lands for taxes shall not be void, if assessed in the names of the warrantees, though they are not the real owners.

But, still, whatever may have been the intention of the Legislature on this point, it can admit of but little, if any doubt, that when the same land sold, is wholly covered by each of two different titles, or warrants and surveys, one of which is older than the other, and a sale is made of it for taxes assessed in the name of the party connected with the junior title, it will pass the right under the elder; but when the land embraced by the junior title is only in part included under the elder warrant and survey, as in this instance, and the land embraced by each warrant and survey is assessed as two distinct tracts for the same years as unseated, and sold at the same time to two different purchasers, it will scarcely be pretended that the purchaser of the tract assessed in the name of the person to whom the elder warrant was granted, or the person claiming the land under it, will not be entitled to the land embraced within the interference of the two surveys, in

v. — 54  2 L *

[Hunter v. Albright.]

preference to the purchaser of the land assessed under the junior warrant. The seniority of title must, of necessity, be looked to in such case, and be made the test of right between the two purchasers. In the present case, however, the land surveyed under the junior warrant was assessed with taxes as unseated, and sold on account thereof, and purchased by the commissioners of the county, no one being willing to bid the amount of the taxes and costs for it, before there was an assessment made on the land sold under the elder warrant and survey; but during the time that the commissioners held the land embraced by the junior warrant and survey, they caused the whole of the land within the limits of the survey made under the elder warrant to be assessed as unseated, and sold on account of the taxes so assessed to the plaintiff below without any reservation or exception of any part thereof. That the commissioners had a right to restrict the limits of their purchase to that portion of the land embraced within the junior survey, which did not interfere with or lie within the lines of the elder survey, cannot, I think, be questioned on any tenable ground. And I think it still less questionable, if possible, that by taxing that part of the land within the lines of the junior survey, while they were the owners of it, which was included within the elder survey as part and parcel of the latter, they must be considered as thereby disclaiming all right which otherwise they might have had under their purchase, to that part of the land surveyed under the junior warrant, which had been previously surveyed under the elder warrant. It must be so considered, for otherwise they had no right to assess or tax it as their property, or more properly, that of the county; but as the property of the claimant or owner of the elder warrant and survey, they certainly had.

The necessary inference then is, that Albright by his purchase became the owner of the whole of the land included within the survey made in pursuance of the elder warrant in the name of Little. The commissioners of the county, it is true, after the purchase by Albright, sold the whole of the land embraced within the survey made under the junior warrant; but had they a right, after having acted as they did, to sell that part of it embraced by the elder warrant and survey? Before they sold it, they had assessed taxes on it as part of the tract held under the Little warrant, and received those taxes out of the money arising from the sale made of it to Albright. And afterwards, when they sold to John Thomas, under whom the plaintiffs in error claim, they, if they sold the part in dispute, of course, charged it again with taxes, and got the same out of the purchase money received of Thomas; thus assessing and receiving taxes on the same land twice. Such conduct on the part of an individual would most unquestionably be condemned as unjust, and no one can doubt that the county, which is a corporate person, and acts by its commissioners, who are its representatives, is bound by the same rules

and principles that govern individuals in their dealings with each other. The commissioners, therefore, after having purchased the land assessed under the Capp warrant, and while they held it by virtue thereof, by assessing and causing that part of it which is in dispute here, to be sold to the defendant in error as part of the tract held under the Little warrant, must be considered as relinquishing all claim to it, and having no right to sell it afterwards to John Thomas. We, therefore, think that the court below was right in instructing the jury that the plaintiff was entitled to recover.

Judgment affirmed.