## Kunes et al. *versus* McCloskey et al.

1. The purchaser of land at a treasurer's tax sale has an inchoate title the moment the property is knocked down to him, which becomes perfect with the payment of the purchase money. His rights are fixed by the sale, and the subsequent payment of the purchase money and the delivery of the deed relate back to it.

2. In order to ascertain the relative rights of purchasers of land at a commissioner's or treasurer's tax sale by reason of priority of purchase, the law might regard fractions of a day; but where there is no evidence as to priority of purchase, the accidental priority of one to another in the delivery of the deeds is unimportant.

3. Fritz *v.* Brander, 28 P. F. S., 342, distinguished.

4. When two tracts of land, embraced respectively in an elder and in a junior warrant and survey, are assessed as two distinct tracts for the same year as unseated, and are both sold at a treasurer's tax sale to the county commissioners, the land embraced in the elder warrant and survey first, and the two tracts are subsequently sold at a commissioner's tax sale on the same day to different purchasers, there being no evidence as to which was the prior sale, the purchaser of the tract first sold to the commissioners will be entitled to the land embraced within the interference of the two surveys. The seniority of title is the test of right between the two purchasers.

5. Hunter *v.* Albright, 5 W. & S., 423, followed.

February 17th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Centre county:* Of January Term 1886, No. 312.

Ejectment by John McCloskey and Mathias M. McCloskey

[Kunes et al. *v.* McCloskey et al.]

against D. B. Kunes and Joseph B. Ponman for a lot of land in Centre county.   Plea, not guilty.

The following are the facts of the case as they appeared on the trial before SIMONTON, P. J., of the 12th Judicial District.

The contention in this case was for an alleged interference between two surveys in the warrantee names of "Joseph Taylor" and "Robert Irwin," respectively, the title to which is based upon treasurer's sales for taxes assessed in the name of each survey and for the same years, to-wit: 1872 and 1873.

The Joseph Taylor tract, 415 acres, Curtin township, Centre county, was sold by the treasurer to the commissioners at the regular biennial sale, June 8th, 1874, for $89.12.   The Robert Irwin tract, 392 acres, 80 perches, same township and county, was sold by the same treasurer, and to the same commissioners, at an adjourned sale on the 3d of August, of the same year, for $45.22.

On the 12th day of February, 1884, the commissioners sold the "Joseph Taylor" tract, 415 acres, Curtin township, Centre county, to D. B. Kunes, plaintiff in error and defendant below, for $84, for which they delivered him their deed, in due form, on the 23d of February following.

On the same day, to wit: February 12th, 1884, at the same sale, the commissioners sold the Robert Irwin tract, 392 acres, 80 perches, Curtin township, Centre county, to John M'Closkey, defendant in error and plaintiff below, for $26, and delivered him their deed dated the same day.

There was no positive evidence as to which was the prior sale.

The commissioners who conducted this sale of unseated lands advertised no terms or conditions of sale, and none were announced to the bidders before the sale commenced or during its progress.

After the Joseph Taylor tract had been struck down to the plaintiff in error he at once tendered the purchase money in cash to the commissioners and demanded his deed.   This was before the sale was ended, and during the time that the commissioners and their clerk were busy receiving money from purchasers, and filling out deeds.   In reply to this tender of money they stated to him that it would be impossible for them to make out all the deeds for tracts sold that day, and requested him to wait until the next time he would come to town and then they would have his deed made out.   He acceded to this request.

Later in the same afternoon, but before the sale had ended, he again, in company with W. C. Heinle, Esq., a member of the bar of Centre county, called upon the commissioners and

[Kunes et al. *v.* McCloskey et al.]

again tendered payment of the purchase money for the Joseph Taylor tract, and was again put off by them with the reasons before given. The same evening, after the sales were over, after supper, plaintiff in error again called on the commissioners, in their office, and again demanded his deed and tendered payment of the purchase money, and was again put off on the ground that they were then too busy to make out the deed, but that they would have it made out and would deliver it to him the next time he came to town.

The next time plaintiff in error came to town, Bellefonte, was on February 23d, eleven days after the sale. On that day he went to the commissioners' office, paid the purchase money and his deed was delivered to him.

It was in evidence that it was impossible for the commissioners to have made out and executed, on the day of sale, deeds of conveyance for all the unseated lands sold on that day.

The warrant in the name of Robert Irwin was granted 1st of July, 1793. The survey, in pursuance thereof, was made on the 19th of August, 1794. The warrant in the name of Joseph Taylor was granted 26th of November, 1793. The survey in pursuance of this warrant was made on the 16th day of May, 1794. Neither warrant was descriptive, and therefore the Joseph Taylor, being the elder survey, was senior in title to the Robert Irwin.

The court instructed the jury, *inter alia*, as follows:

If the taxes were paid on neither tract, and the commissioners did purchase both, they, therefore, owned the interference, they owned what was included in either of the surveys or included in both. When they sold them and made the first deed they conveyed all that was within the interference, because they owned it at that time; when they came to make the second deed to the defendant afterwards, they had nothing to convey except what was outside of the interference. The plaintiff then, in this case, became the owner of whatever was within the interference, and, therefore, on that first point we instruct you that he got the better title from the commissioners. (First assignment of error.)

We instruct you that the plaintiff is entitled to a verdict for the lands described in the writ. (Third assignment of error.)

Verdict for the plaintiff for the land described in the writ and judgment thereon, whereupon the defendants took this writ and filed *inter alia* the above assignments of error.

*William H. Blair* (*D. H. Hastings* and *Wilbur F. Reeder* with him), for plaintiff in error.—County commissioners can only convey by deed what they have previously sold by public sale. This has often been decided. Their powers being de-

Am

rived from the statute, all acts beyond the authority conferred are *ultra vires*, and therefore void.

Public policy requires this court to adhere to the rule laid down in Hunter *v.* Albright, 5 W. & S., 423. See also Fritz *v.* Brandon, 28 P. F. S., 342; Brandon *v.* Fritz, 13 Norris, 88.

*John H. Orvis* (*Bower & Orvis* with him), for defendants in error.—As both purchasers could not have the title, and as there was no priority in the purchase, necessity required the court to adopt some rule by which the one would have preference over the other, and seniority of title being all that existed, was applied. No necessity exists for adopting such a rule where there is priority in the purchase. When the money is paid and the deeds delivered at different times, he who has the oldest conveyance from the common grantor has the better title. This would be the law of the case on general principles regardless of any special authority on the point. But the very point was decided by this court in Fritz *v.* Brandon, 78 P. S. R., page 357, in which Chief Justice AGNEW, after commenting on the cases of Hunter *v.* Albright, *supra*, and Diamond Coal Co. *v.* Fisher, 19 P. S. R., 267, says: " And irrespective of the doctrine of these cases, if the tax sale in either name be sufficient to convey the title to the actual *locus in quo*, the title of Roseberry would prevail, for he was the first to pay the purchase money to the commissioners and obtain his deed. *Prior in tempore, potior est in jure.*" The court below was therefore clearly right in instructing the jury as was done in that part of the charge embraced in the first specification of error.

Could the commissioners set up title under the treasurer's sale of the Joseph Taylor in 1874, after they had conveyed the same land to the plaintiffs under the name of Robert Irwin? Certainly not, unless the doctrine of " estoppel by deed " is entirely obliterated from our system of jurisprudence: Brown *v.* McCormick, 6 Watts, 60; Banks *v.* Ammon, 27 P. S. R., 172; Washabaugh *v.* Entriken, 34 P. S. R., 74; Miller's Appeal, 84 P. S. R., 391.

If the county commissioners could not set up this title against the plaintiffs below, Kunes, as the subsequent vendee of the commissioners with full notice of the purchase by the plaintiffs, is in no better situation.

Mr. Justice PAXSON delivered the opinion of the court March 21st, 1887.

The first assignment of error raises the only question of importance in this case. In that portion of the charge embraced in said assignment the learned judge below instructed the jury in substance that, inasmuch as the county owned both the Jo-

seph Taylor and the Robert Irwin tracts, that it therefore was the owner of what was included in either of the surveys or included in both; that when the commissioners sold them and made the first deed, they conveyed all that was within the interference, because they owned it at that time; that when they came to make the second deed to the defendant afterwards, they had nothing to convey except what was outside the interference. The learned judge thereupon instructed the jury that, upon this branch of the case, the plaintiff got the better title from the commissioners.

Each of these tracts had been sold for taxes by the county treasurer. The Joseph Taylor, containing 415 acres, was sold by the treasurer of Centre county to the commissioners at the regular biennial sale, June 8th, 1874, for $89.12. The Robert Irwin, containing 392 acres and 80 perches, was sold by the same treasurer to the same commissioners, at an adjourned sale on the 3d of August of the same year for $45.22.

On the 12th of February, 1884, the commissioners sold both of these tracts. They sold the Robert Irwin to John M'Closkey, plaintiff below, for $26 and delivered him their deed therefor, dated the same day. They sold the Joseph Taylor to D. B. Kunes, defendant below, for $84, for which they delivered him their deed on the 25th of the same month.

The court below ruled, as has been stated, that the deed to the plaintiff, being prior in point of time, conveyed the title to the interference.

This might be so, if in point of fact there was any priority of the one deed over the other, and such deed by its terms and the understanding of the parties, conveyed such interference.

The difficulty in the way of this view of the case is, that both tracts were sold upon the same day, and there is no evidence in the case that points with any degree of certainty as to which tract was first sold. At most there was but a scintilla, by far too little to base thereon an adjudication as to the rights of property. It may be that in the case of a sale by the commissioners of two tracts upon the same day, the law might regard fractions of a day in order to ascertain the relative rights of the parties. No such attempt was made in the present instance and in its absence we must regard the accident of priority in the delivery of the respective deeds as unimportant. The rights of the parties were fixed by the sale, and the subsequent payment of the purchase money and delivery of the deed relate back to that event. The purchaser has an inchoate title the moment the property is knocked down to him, which becomes perfect with the payment of the purchase money. The deed from the commissioners was not the title itself; it was merely the evidence of the title. It is a mode of

5 AMERMAN—30

assuring and preserving such evidence which experience has shown to be the most convenient method.

If we concede, however, that the plaintiff's deed has priority as a conveyance, it by no means follows that it operates as a conveyance of the interference. That it was not intended by the parties so to operate seems clear from the fact that so far as the evidence shows none of them knew of the interference at the time of the commissioners' sale. It was not known to either of the parties or the commissioners. What then did the latter sell at the sale referred to? They sold precisely what was conveyed to them by the treasurer's deed.

It was urged, however, that Fitz *v.* Brandon, 78 Penn., 342, is in conflict with this view of the case. It is true Chief Justice AGNEW, after commenting upon the cases of Hunter *v.* Albright, 5 W. & S., 423, and Diamond Coal Company *v.* Fisher, 19 Penn., 267, said: "And irrespective of the doctrine of these cases, if the tax sale in either name be sufficient to convey the title to the actual *locus in quo*, the title of Roseberry would prevail, for he was first to pay the purchase money to the commissioners and obtain his deed. *Prior in tempore potior est in jure*. But it is sufficient that the title under the Gray surveys being good, the tax sales of Troxel and Immel were good."

The language quoted indicates, what an examination of the case clearly shows, that the case referred to had already been decided upon other grounds, and when we examine the facts of which it was predicated we find that although the two tracts had been sold by the commissioners upon the same day to two different purchasers, one of said purchasers refused to pay the purchase money for several years, and only settled therefor after the matter had been placed in the hands of an attorney for collection, while the other purchaser paid the money and took his deed promptly. The difference between that case and the one in hand in this respect is too apparent to need comment. Here there was no delay on the part of the defendant. The evidence shows he offered the purchase money on the day of sale and was clamorous for the deed.

This brings us to the question, what title did the commissioners sell? It is doubtless true that the title was absolute in the county if the county chose to enforce such right. The time allowed by law for redemption had passed. It is equally clear, however, under the authority of Jenks *v.* Wright, 61 Penn., 410; Steiner *v.* Cox, 4 Id., 13, that the owner may redeem after the expiration of the five years with the consent of the commissioners. It was held in the latter case that a private sale to the owner, although the consideration was less than the amount in arrears, was valid in the absence of collusion, and that nothing but a corrupt agreement to defraud the revenue

would avoid such conveyance. Such purchase was held to be a redemption; upon no other ground could such a transaction be maintained, as the commissioners have no power to make a private sale to a stranger for any price, whether more or less than the taxes in arrear. In Jenks v. Wright the power of the commissioners to permit redemption after the time has gone by was said by THOMPSON, C. J., to be beyond dispute and to have been exercised in hundreds of cases, while in Steiner v. Cox it is treated as a custom, proper to be proved as a matter of evidence. Not as a custom to override the Statute, but to aid in its construction.

The Acts authorizing sales of land by the commissioners or treasurer, are laws for the collection of taxes, and not for the confiscation of the property of the citizen, who, from any reason, may be unable to pay them when due. It would be beneath the dignity of a great commonwealth to seek to make gain out of the misfortunes of her citizens. Hence we have a provision for redemption in case of both treasurer's and commissioners' sale. During the period allowed for redemption the equitable title is in the owner; the legal title is in the treasurer or commissioners, as the case may be, as security for the unpaid taxes and costs. After the five years have elapsed, in cases of sales by the commissioners, the owner loses his legal right to redeem. This is not because his equity entirely ceases, but because there must be a time certain when the commissioners may proceed, with or without the consent of the owner, to collect the taxes due. But an equity, not enforceable it is true, remains in the owner, sufficient to warrant the commissioners in permitting redemption at any time before a public sale to other parties, as precribed by Act of Assembly.

The commissioners sold these tracts precisely as they bought them at the treasurer's sale, and by the same description. The commissioners' deeds respectively describe them only by their warrantee names; no courses and distances or other boundaries or marks are given. They sold what they bought from the treasurer, and nothing else, and they sold them precisely as they had bought them.

The Joseph Taylor was sold by the treasurer to the commissioners on June 8th, 1874; the Robert Irwin was sold by the same treasurer to the same commissioners on the August 3d, 1874. Both treasurer's deeds appear to have been dated on the same day, but as before observed, it was the *sale* that fixed the rights of the parties, and not a scramble for the first deed. The commissioners therefore acquired title to the Joseph Taylor before they acquired title to the Robert Irwin. The Taylor was the older survey and paramount title. Hence when they subsequently bought the Robert Irwin, they bought what was

left outside of the Joseph Taylor, conceding these to be an interference as claimed.   Holding the two titles therefore in the manner above stated, it is conceded the commissioners might, had they so willed, have sold this interference by metes and bounds.   But they did not do so nor attempt it.   They sold both tracts as they received them without any regard to location.   The purchaser of the Joseph Taylor took by his deed just what the commissioners took by the treasurer's deed. So of the Robert Irwin.   Suppose, instead of making this sale of the two tracts, the commissioners had sold them to the owners at private sale.   This, under the authorities cited, would have been a redemption, although after the five years.   Surely no intention of passing the interference would be presumed in such case.

The county commissioners can only convey by deed what they have previously sold by public sale, excepting perhaps the single instance of a conveyance to the owner by way of redemption.   The deed from the commissioners to the plaintiff below limits their conveyance to the premises conveyed to their predecessors by the treasurer's sale of August 3d, 1874.   The recital is as follows : " It being the same tract of land which J. B. Mitchell, treasurer of said county . . . . sold, granted and conveyed by deed poll dated the 20th day of November, 1874, to the commissioners of Centre county and to their successors in office," etc.   In like manner, the commissioners' deed to the defendants below, refers to the sale of June 8th, 1874. The sale of the Joseph Taylor having been prior to the sale of the Robert Irwin, it is difficult to see how the treasurer's deed conveyed to the county more than the residue of the Robert Irwin, that is to say, what remained outside of it after the sale of the Joseph Taylor in June preceding.

Under such circumstances I see no reason why the rule laid down by Justice KENNEDY in Hunter *v.* Albright, 5 W. & S., 423, should not apply : " But when the land embraced by the junior title is only in part included under the elder warrant and survey, as in this instance, and the land embraced by each warrant and survey is assessed as two distinct tracts for the same years as unseated, and sold at the same time to two different purchasers, it will scarcely be pretended that the purchaser of the tract assessed in the name of the person to whom the elder warrant was granted, or the person claiming the land under it, will not be entitled to the land embraced within the interference of the two surveys, in preference to the purchaser of the land assessed under the junior warrant.   The seniority of title must of necessity be looked to in each case, and be made the test of right between the two purchasers."

The first and third assignments of error are sustained. The remaining assignments do not require discussion.

The judgment is reversed and a *venire facias de novo* awarded.

TRUNKEY, STERRETT and CLARK, JJ., dissent.