## JOHN McCLOSKEY v. D. B. KUNES ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
OF CENTRE COUNTY.

Argued April 20, 1891—Decided May 4, 1891.

(a) Two tracts of unseated land, assessed separately in the original warrantee names, were sold at treasurer's sale at different dates for unpaid taxes for the same years, and bought in by the county commissioners, the deeds from the treasurer being afterwards delivered on the same day.

(b) Ten years later, the county commissioners offered these and other lands, so purchased, at public sale on the same day and by the same description, when they were sold to different purchasers, the purchase moneys paid and deeds delivered afterward, on different days :

1. The titles of said purchasers related back to the day of the sales to them, respectively, and the purchaser of the tract first purchased by the county at the treasurer's sale, will take superior title to an overlapping of the two tracts, subsequently discovered : Kunes v. McCloskey, 115 Pa. 461.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 6 July Term 1890, Sup. Ct.; court below, No. 70 April Term 1885, C. P.

On February 5, 1885, a summons was served in ejectment by John McCloskey and Matthias McCloskey against D. B. Kunes and Joseph B. Poorman. Issue.

At the trial, on January 2, 1886, before SIMONTON, P J. 12th district, specially presiding, a verdict was rendered for the plaintiffs. On March 21, 1887, on writ of error to No. 312 January Term 1886, the judgment entered on the verdict was reversed, with a venire de novo : Kunes v. McCloskey, 115 Pa. 461. The record having been returned, an agreement was filed submitting the cause to the decision of the court, without a jury, under the provisions of the act of April 22, 1874, P. L. 109.

After hearing, the court, FURST, P. J., on January 11, 1890, filed a decision as follows:

Decision of Court below.

## FINDINGS OF FACT.

I. As to title :

1. The plaintiffs are the owners of the title to the tract of land in the warrantee name of Robert Irwin, which tract was surveyed on August 9, 1794, in pursuance of a warrant dated July 1, 1793, as containing 392 acres and 80 perches.

2. [The defendant, D. B. Kunes, is the owner of the tract in the warrantee name of Joseph Taylor, surveyed on May 16, 1794, in pursuance of a warrant dated November 26, 1793, containing 415 acres and allowance.] [1] Joseph B. Poorman, the other defendant, was a contractor, and defends under the title of his co-defendant.

3. Both tracts, being unseated, were assessed in the township of Curtin, with the taxes for the years 1872 and 1873. The taxes remaining unpaid, they were sold by the treasurer to the county; the Joseph Taylor tract on June 8, 1874, for the sum of $89.12, and the Robert Irwin tract on August 3, 1874, for $45.22. They were severally assessed and sold in their warrantee names, and deeds were duly made by the treasurer to the commissioners for the same, on November 20, 1874. There was no redemption of either tract by the owner.

4. The commissioners advertised a public sale of all the lands in the county, thus purchased by them and unredeemed, to be held at the court-house in Bellefonte on February 12, 1884, at which time and place they would sell the same to the highest bidder.

5. This sale was conducted by an auctioneer and clerk. The clerk had previously prepared an alphabetical list of the tracts to be sold in the several townships. To this list nothing was to be added on the day of the sale, but the names of the several bidders to whom struck down, and the respective price bid for each tract. The commissioners had no knowledge of the several bidders, until this list was returned to them at the close of the sale by the clerk, which was done. It was not necessary for the commissioners to be personally present at the sale.

6. The sale was opened by proclamation that all the tracts on the list would be sold. Both John McCloskey and D. B. Kunes were present. The tracts were sold in alphabetical order, as they were placed on the list. The Robert Irwin tract was first offered and knocked down to John McCloskey for the sum

Decision of Court below.

of $26. The intermediate tract was then offered and knocked down. Immediately after this, the Joseph Taylor tract was offered and knocked down to D. B. Kunes for the sum of $84. But a short time, not exceeding five minutes, intervened between the striking down of the Robert Irwin and the Joseph Taylor.

7. John McCloskey, plaintiff, was an adverse bidder against D. B. Kunes, defendant, for the Joseph Taylor tract, in consequence whereof the price for which it was sold was increased.

8. Upon the completion of the list, the clerk returned the same to the commissioners, with the names of the successful bidders, and the respective price at which each was struck down; whereupon the [defendant tendered to the commissioners the purchase money for the Joseph Taylor and demanded a deed. This was done before plaintiff offered to pay the purchase money for the Robert Irwin, and before the delivery of the deed for same.] [2]

9. [On February 12, 1884, sometime after the close of the sale and after the defendant had tendered the purchase money for the Joseph Taylor, the plaintiff offered and paid the purchase money for the Robert Irwin, and obtained a deed therefor in the usual form.] [3]

10. The commissioners were unable to make and execute all the deeds on the day of the sale. They therefore informed defendant he should retain the purchase money in his hands, and call the next time he was in town; this he did on the twenty-third day of February. The commissioners then received the purchase money and delivered him a deed, dated the thirteenth of February. The defendant was in no default.

11. The deed to plaintiff for the Robert Irwin, recites that it is the same tract which was conveyed by the treasurer to the commissioners by deed dated November 20, 1874; and the deed to the defendant for the Joseph Taylor recites that it is the same tract which was conveyed by the treasurer to them by deed of same date.

12. At the time of sale on February 12, 1884, and for a considerable time thereafter, neither the commissioners nor the purchasers from them knew of any interference between said tracts. The same was sold, bought and conveyed as separate and distinct tracts or surveys, without knowledge of any inter-

Decision of Court below.

ference.   They were so held and treated by plaintiffs and defendants, until the discovery of the interference.

II. As to location:

13. The Joseph Taylor is the senior survey.   It is a part of the Freeze block which is well located on the ground.   The southeast corner of the Taylor is found to be original, and the witnesses to the northeast corner are also original.   This fixes the eastern boundary of the tract, without the aid of other monuments in the block, which also fully establishes its location. . . . . This location is not disputed in this case.

14. The Robert Irwin is one of a junior batch of surveys. It was a chamber survey, but at this day it must be presumed to have been surveyed upon the ground.   It has neither lines nor corners found.   It is, however, well located by its calls for adjoiners. . . . .

15. The defendants were not in possession of any part of the lands described in plaintiffs' writ, outside the lines of the Joseph Taylor, and were not at the time of service of writ; their possession being solely within the lines of the Taylor, which is within the interference.

### FINDINGS OF LAW.

The court finds the legal principles and rules applicable to and controlling this case as follows:

\*    \*    \*    \*    \*    \*    \*    \*

4. The county commissioners, under the various acts of assembly relating to unseated lands, are but the fiscal agents of the county, for the collection of taxes assessed thereon. They have only such powers as are conferred upon them by statute.   Any act or covenant upon their part in excess of this authority is ultra vires, and void.

5. The act of March 13, 1817, 6 Sm. L. 426, leaves it discretionary with the commissioners what lands they will bid in at treasurer's sale for the use of the county.

6. The land is debtor for the taxes, and a sale thereof in the warrantee name of the tract will pass the title of the real owner.   There can, in law, be but one assessment thereof.

7. The act of April 21, 1856, P. L. 477, applies the rule of caveat emptor to all sales made by the treasurer or commissioners, except in case of double assessment of the same tract, or when the taxes on which the sale is made have been pre-

Decision of Court below.

viously paid, or when the lands do not lie within the county. In the excepted cases, the county would be liable to refund the money paid.

8. The commissioners cannot covenant either as to quantity, location, or title. The law clothes them with no such authority, and a purchaser, under the rule of caveat emptor is affected with knowledge of this limitation upon their powers. Under a sale by commissioners of a tract of land in its warrantee name, or otherwise, they can pass only such title as is vested in them by previous purchase at treasurer's sale.

9. When the treasurer, on June 8, 1874, sold the Joseph Taylor to the commissioners, they became the owners of all the land within the lines of the tract. This sale relieved the tract from all liability to taxation in any other name, as effectually as if the owner had paid the taxes. The land had been seized and sold for all the taxes due upon it, and the title thereto, by virtue of the sale and conveyance, became vested in the county, subject only to the right of redemption.

10. The treasurer's sale on August 3d thereafter, of the Robert Irwin, vested title in the county, only to that part of the tract lying without the lines of the Joseph Taylor. All within the interference had passed by the previous sale.

11. [Under the facts, the striking down of the Robert Irwin tract to the plaintiffs upon their bid, before offering the Joseph Taylor at the same sale, does not in law constitute priority of purchase, so as to clothe the junior interfering tract with superiority of title over the senior survey.] [4]

12. The purchase is not complete when the property is struck down by the auctioneer. This so far only designates the person as the highest bidder, and gives to him the incipient, exclusive right to become the purchaser at the price offered. The sale being cash, the law makes it his further duty, as soon as the property is struck down, to pay or offer to pay the purchase money. Now, if he fails to do this, the sale may be avoided, and the property immediately put up again for sale.

[The law regards the payment, or the offer to pay, the purchase money. It is this which consummates the sale. Until this is done by the bidder, he has not performed his bid. The act of assembly declares this must be done as soon as the pro-

perty is struck down, and in case the amount is not forthwith paid, after the property is struck down, it may immediately be put up for sale. Giving the language of the act a construction favorable to the purchaser, its evident meaning is that the offer to comply with the bid must be made as soon after the property is "struck down" as is reasonably practicable under the particular circumstances. This act on the part of the bidder shows his willingness to take the property at the price offered, and when performed, the sale is absolute and he is clothed with the rights of a purchaser. The deed is the statutory evidence of the title acquired by the sale.] [5]

13. [The plaintiffs are not entitled to recover in this case.] [6]

And now, January 11, 1890, the court upon the issue joined in this case, finds in favor of the defendant.

—Exceptions filed by the plaintiffs having been argued, an order was made on April 2, 1890, overruling the same and directing judgment to be entered for the defendants. Thereupon, the plaintiffs took this appeal, specifying that the court erred:

1–3. In the findings of fact embraced in [ ] [1 to 3]
4–6. In the findings of law embraced in [ ] [4 to 6]

*Mr. John H. Orvis* (with him *Mr. C. M. Bower* and *Mr. Ellis L. Orvis*), for the appellants.

*Mr. Wilbur F. Reeder* (with him *Mr. D. H. Hastings*), for the appellees.

PER CURIAM:

The elaborate argument of the appellant has failed to convince us that we committed any error when this case was here before: See Kunes v. McCloskey, 115 Pa. 461. There appears to be an impression prevailing to some extent with the bar that, two judgments in this court are as essential to settle a title in ejectment, as are two verdicts at law in the court below. We do not care to re-open the discussion; it is sufficient to repeat what was said near the close of the opinion in 115 Pa. 468: "The sale of the Joseph Taylor having been prior to the sale of the Robert Irwin, it is difficult to see how the treasurer's deed conveyed to the county more than the residue of the

Statement of Facts.

Robert Irwin; that is to say, what remained outside of it after the sale of the Joseph Taylor in June preceding." Under such circumstances, we do not think it was error to apply the rule in Hunter v. Albright, 5 W. & S. 423.

Judgment affirmed.