## Neill *versus* Lacy et al.

1. Unseated lands are alone liable for taxes assessed thereon; there is no personal responsibility upon the owner thereof.

2. The owner of mineral rights under such land, holding by virtue of a reservation in a deed, is neither a tenant in common nor a joint tenant with the owner of the surface. Hence a payment of taxes by such owner of mineral rights, in order to prevent a sale of the same, cannot be recovered back from the owners of the surface.

May 27, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Warren county*: Of January Term 1885, No. 96.

Assumpsit by Joseph A. Neill against George S. Lacy and R. H. Kline to recover back money paid for taxes upon land owned by defendants which plaintiff claimed he was compelled to pay in order to save his mineral rights in the same.

The facts, as found in a special verdict, were substantially as follows: That on December 22, 1871, title was vested in Thomas A. Scott, C. B. Curtis, Joseph A. Neill and Leroy S. Lowry, as tenants in common in lots Nos. 5230, 5231, 5223 and one half of lot 5228, in Limestone township, and on that day the said owners conveyed to Elmer N. Lacy the whole of the land mentioned, reserving all the oil, coal or other minerals upon said land, or in any way growing out of or connected with the said lands as heretofore described. Also, reserving the right of ingress and egress to operate the same as fully as if this conveyance had never been made, except upon ten acres upon which may be erected a mill for the manufacture of lumber, and which exception shall extend to each tract, which may be used in the manufacture of lumber as aforesaid, relieving all the oil and minerals in said ten acres in each tract heretofore reserved for lumbering.

Subsequently, by sundry mesne conveyances and proceedings in partition, George S. Lacy and R. H. Kline, the defendants, became the owners of lots Nos. 5230, 5223 and one half of lot 5228. The said lots were advertised for sale by the treasurer of Warren county for arrears of unpaid taxes for the years 1880 to 1882, and on June 12, 1882, they were put up for sale at auction by the treasurer and bids were made upon each tract, upon one as high as $30,000.

Neill, the plaintiff, was present and tried to effect some arrangement with one Cable, who said that he represented George S. Lacy, by which the taxes could be paid, or would

[Neill v. Lacy]

be paid, or the property purchased and bid in, in the interest of all parties concerned who had interests therein. That Cable replied that he was there for the purpose of bidding off the property for Lacy, and had no authority to make any arrangement about it or to do anything else. That, in order to preserve the interests of Scott, Curtis, Lowry and himself in the reservation, Joseph A. Neill, the plaintiff, then induced the treasurer to stop, under the promise of Neill that he would pay the taxes, and he did so that day, to the amount of $589.07, and took from the treasurer, F. M. Knapp, his receipt therefor of that date. That Neill, at the time he arranged to pay the taxes to the treasurer, and when he did pay them, publicly announced that he did it under protest and for the purpose of preserving the interest of himself, Lowry, Curtis and Scott. And in all these deeds, including the one from the master, the reservation of the oil and minerals, as contained in the first deed, is specifically mentioned.

Lots numbered 5223 and 5230, in Limestone township, were assessed as unseated, and the half of 5228, in Watson township, also, was on the unseated list. In 1880, 5228 was assessed in Limestone township. That the lands were cried for sale a little out of order before they were reached in their regular order to accommodate Neill so that he could return home on the next train, he not knowing that any person representing Lacy was present until after they were put up, and when they were put up, Neill announced that he would purchase for the benefit of all the parties interested, and Neill did not discover Cable or anyone else representing Lacy until after the first were cried for sale.

If, in opinion of the court upon the facts found, judgment should be given for the plaintiff, then we find for the plaintiff the sum of $653.86; otherwise we find for the defendants.

The court entered judgment for defendants on the special verdict, filing the following opinion:

"That James Cable was bidding on the land for defendant Lacy at the treasurer's sales of 1882 we treat as a fact found by the jury, inasmuch as counsel on both sides have so assumed. But the fact that Lacy, through his agent, was attempting to buy the lands we think has no bearing on the question, even if it be granted that a purchase by him unredeemed from would extinguish the rights of Neill, Scott, Curtis and Lowry. As we understand the law, Lacy had the same right to become a purchaser at the treasurer's sales of unseated land as an entire stranger to the title had. Although owner or part owner of the land at the time of the treasurer's sale, he was under no legal and personal liability to pay the taxes. The land and not the owner is debtor to the unseated tax. Being

under no personal liability to the public for the taxes on his own land, he was under no personal obligations to discharge the same in the relief or for the protection of the plaintiff's interest in the same land. Had the plaintiff paid taxes for which the defendants were legally and personally liable, in order to protect his own interest in the lands, the law would imply an agreement by defendants to indemnify him for such payment. But here the law fixes no personal liability on defendants. They have made no express promise to pay, and there is no community of interest from which a promise to pay can be implied. The interest of the plaintiff is distinct from and of an entirely different nature from that of defendants. The one has an estate in the oil, coal and other minerals. The other has an estate in the lands, excluding the oil, coal and other minerals. To hold the defendants liable to reimburse the plaintiff for money expended by him in what we think we must treat as a voluntary payment of taxes, would be to decide contrary to what we understand to be the settled law of the state, namely, that unseated land and not the owner thereof is the debtor to the taxes."

Plaintiff then took this writ, assigning for error the action of the court in entering judgment on the special verdict for the defendants.

*R. Brown* and *Samuel T. Neill* (*Charles W. Stone* with them), for plaintiff in error.—The oil right or reservation in plaintiff's deed for this land, under which defendants held and were in possession, was imperilled. The hour for sale had arrived and some of the tracts had been offered, and at this juncture the plaintiff paid the taxes under protest. Such payment was under duress: Grim *v.* Weissenberg School District, 7 P. F. S., 433; Hogg *v.* Longstreth, 1 Out., 255.

This tax sale would have destroyed the reservation and his estate or interest in the land: Mitchell *v.* Steinmetz, 1 Out., 251. Hence his payment cannot be regarded as voluntary—especially under the circumstances of this case when they were urging and insisting on a sale by the officers.

Again under the authority of Wheeler *v.* Carpenter, 11 Out., 271, and Boults *v.* Mitchell, 3 Har., 364, the defendants were tenants in common with the plaintiff and bound to pay at least their proportion of the common encumbrance, according to the value of their respective estates; and as the plaintiff's interest is so uncertain and conjectural in its taxable value, if it has any, and there being no evidence on the subject, the plaintiff had a right to maintain an action for all that he had paid for the benefit of defendants' estate, that being, as we have said, the only estate having an appreciable value.

*Charles H. Noyes* ( *W. D. Hinckley* with him), for defendants in error.—The unseated tax is not a personal charge upon any one, but the land is the debtor, and out of the land only can it be collected. The thing which the defendants owned was entirely distinct and different from that owned by the plaintiff and his co-tenants, quite as distinct as if each had owned separate tracts of land. The plaintiff might have prevented any question by returning his property for assessment separate from the surface, and paying his taxes: Logan *v.* Washington County, 5 Casey, 373.

The defendants, being under no liability either to the public or to the plaintiff, cannot be made personally liable by plaintiff's voluntary payment.

There is no authority to sustain the position that the owners of the surface and the owners of the minerals under the same were tenants in common.

The opinion of the court was filed October 5th, 1885.

PER CURIAM.—The parties did not hold this land either as tenants in common or as joint tenants. Each party had a separate estate therein. The clear and satisfactory opinion of the learned judge fully sustains his conclusion, and supports the judgment.

Judgment affirmed.