# Rockwell *v.* Keefer, Appellant.

*Taxation—Minerals—Separation of title—Unseated land.*
Where there is a separate ownership of oil, gas and minerals in a tract of unseated land such mineral right may be separately assessed for taxes.

Argued April 13, 1909. Appeal, No. 31, April T., 1909, by defendants, from decree of C. P. Warren Co., March T., 1908, No. 41, on bill in equity in case of F. H. Rockwell & Company v. Warren County and C. S. Keefer, Treasurer. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Bill in equity for an injunction. Before LINDSEY, P. J.
The opinion of the Superior Court states the facts.

*Error assigned* was decree awarding injunction.

*W. W. Wilbur,* for appellant.—Under the decisions of the Supreme Court, it has become an established rule, regarding the title to land, that where there is a divided ownership of land, one owning the surface and another the gas, oil or other minerals, that each estate is to be assessed and sold separately: Westmoreland, etc., Nat. Gas Co. v. DeWitt, 130 Pa. 235; Marshall v. Mellon, 179 Pa. 371; Hutchinson v. Kline, 199 Pa. 564; Ridgway Light & Heat Co. v. Elk County, 191 Pa. 465.

*D. I. Ball,* for appellees.—We contend that the law as we claim it to be, has been well understood and uniformly applied in practice throughout the commonwealth for more than a century, and if there be any considerable number of lawyers who understand the law to be as claimed by the appellants, it is because they have lost the traditions of the fathers: Fager v. Campbell, 5 Watts, 287; Harper v. McKeehan, 3 W. & S. 238; Strauch v. Shoemaker, 1 W. & S. 166; Caul v. Spring, 2 Watts, 390; Collins v. Barclay, 7 Pa. 67; Reinboth v. Zerbe Run Improvement Co., 29 Pa. 139; Reading v. Finney, 73 Pa. 467; Davis v. King, 87 Pa. 261; Pottsville Lumber Co. v. Wells, 157 Pa. 5; Brown v. Hays, 66 Pa. 229; Fones' Deed, 7 Pa. Dist. Rep. 427.

OPINION BY MORRISON, J., July 14, 1909:

The plaintiffs were the owners of a large quantity of unseated land in Warren county consisting of 68 tracts and parts of tracts of land, containing in all 9,934 acres. In making sale and conveying said lands they reserved all of the petroleum oil, gas and minerals therein to themselves. For the years 1904, 1905, 1906 and 1907 the owners of the surface of said land were assessed on the unseated list with their surface right and the state and county, school and road taxes were levied on said assessments against said lands and said taxes had been generally paid by the surface owners. For the same years the separate mineral rights in these lands were valued and assessed as such to the owners, F. H. Rockwell & Company, being the oil, gas and minerals therein and rated with state, county, school

and road taxes which taxes being unpaid, said mineral estates or interests were properly placed upon the treasurer's sale list by C. S. Keefer, county treasurer, to be advertised and sold for nonpayment of said taxes. The plaintiffs claiming that there is no authority for making a separate assessment of oil, gas and minerals, although the same is a separate interest in unseated lands, filed the bill in this case and obtained a final decree against the defendants restraining the sale of said separate interest or estate at tax sales for the taxes so assessed and levied thereon for the years 1904, 1905, 1906 and 1907, and from which decree of the court in granting said injunction, the defendants have taken this appeal.

The learned judge below found the facts substantially as we have stated them and there is no dispute in this case as to the facts. The question involved, as stated by the solicitor for defendants, is: "Where there is a separate ownership of oil, gas and minerals in a tract of unseated land, can such mineral right be separately assessed for taxes?" The learned judge reached the following conclusions of law: 1. "That under the law an unseated tract of land must be assessed as one body; and separate ownership of timber, oil, gas and other minerals in the same unseated tract cannot be assessed separately." 2. "The assessments having been made against the oil, gas and mineral rights owned by the plaintiffs in the several unseated tracts of land recited in the bill, separate from the body of the land, the assessments and taxes levied thereon are illegal and the defendants should be restrained from collecting the taxes."

This important case has been ably and satisfactorily presented and argued by the able counsel representing the respective sides of the controversy. The facts were agreed upon in a clear and concise form and the controlling question squarely raised. We have read and carefully considered the opinion of the learned judge below and the argument of the counsel who undertakes to sustain the decree. But, upon careful consideration of the statutory law and the decisions of the courts, we are constrained to hold that the court below erred in holding that separate and distinct estates in unseated land cannot be separately assessed and taxes levied and collected against the

several estates in such land. The learned court below cites, approves and follows a case entitled: "Treasurer's Deeds, unseated lands, assessments," etc. 7 Pa. D. R., 427, decided by the late Judge CHARLES H. NOYES of Warren county. That opinion and decision are not convincing and we are compelled to believe that the law is otherwise, as declared by the Supreme Court. The case of Neill v. Lacy, et al., 110 Pa. 294, holds, as stated in the syllabus: "Unseated lands are alone liable for taxes assessed thereon; there is no personal responsibility upon the owner thereof. The owner of mineral rights under such land, holding by virtue of a reservation in a deed, is neither a tenant in common nor a joint tenant with the owner of the surface. Hence, a payment of taxes by such owner of mineral rights, in order to prevent a sale of the same, cannot be recovered back from the owners of the surface." The lands in that case were assessed as unseated. The Supreme Court, in its brief opinion, said: "Each party had a separate estate therein." Now turning to Logan v. Washington County, 29 Pa. 373, we find the Supreme Court, as long ago as in 1857, holding that: "Where the owner of coal land has sold out the right to take all the coal that is in his land, and retained the land itself, the owner of the land and the owner of the coal are each taxable according to their several interests, . . . The coal is therefore necessarily included in the valuation, if it is accessible, and some person must pay the tax on it. The only question is, Shall it be paid by the owner of the coal or by one who does not own it? To this there can be but one answer. There is a divided ownership of the land, and there ought to be a divided taxation." Here we have a plain decision that the coal sold with a reservation of the surface or the residue of the land was a conveyance of land, and that such conveyed coal was subject to taxation as land.

The learned court below in following the opinion of Judge NOYES was in error as to the situation created by the conveyance of the standing timber on the tract of land without limitation as to the time of removal. It was expressly decided by the Supreme Court in Dexter v. Lathrop, 136 Pa. 565, that such sale of timber would leave the grantor the sole owner of the

land and the other the sole owner of the trees. "The situation is substantially that which is created when the owner of land sells the stratum of coal which underlies it to a mining company. The owner of the coal has an exclusive right to the possession of his own estate. The owner of the surface has a like exclusive right to its possession, subject to the right of entry incidental to the grant of the coal, which resides in his grantee. They are not tenants in common of the coal or of the surface, but each is a sole tenant of his own estate."

Caldwell v. Copeland, 37 Pa. 427, holds as indicated in the syllabus: 1. "Mines in the land of another, whether opened or unopened, may be held as land under a proper deed therefor duly executed, acknowledged and recorded. 2. Possession of the surface for more than 21 years does not carry with it the possession of the coal below it, where the title to the mineral right had been severed from that of the surface by deed." Here we have another plain decision that mines in the land of another may be held as land. It has been elsewhere decided by the Supreme Court that when an owner conveys land reserving mines or minerals therein, he holds the same as if they had been conveyed to him by deed.

In Lillibridge v. Coal Co., 143 Pa. 293, the Supreme Court held, as stated on p. 299: "In the opinions delivered in the foregoing and other cases, we have emphatically decided that the coal or other mineral beneath the surface is land, and is attended with all the attributes and incidents peculiar to the ownership of land. We have held the mineral to be a corporeal and not an incorporeal hereditament; that the surface may be held in fee by one person and the mineral also in fee by another person; that the mineral may be subject to taxation as land, and the surface to an independent taxation as land, when owned by a different person; that possession of the mineral may be recovered by ejectment, and title to it may be acquired by adverse possession under the statute of limitations, though not by prescription, because it is not an incorporeal right. In short, we have for nearly half a century judicially regarded the ownership of mineral, where it has been properly severed from the surface, as the ownership of land to all intents and purposes."

In Powell et al. v. Lantzy, et. al., 173 Pa. 543, the controversy was in regard to unseated lands where a sale was made for taxes assessed and levied before the severance of the title to the surface from that to the minerals, and a purchase of the whole by the owner of the surface. The learned court below contends that the case was entirely different from the question in the present case. But the Supreme Court did hold that notwithstanding the fact that the assessment and sale were of unseated land, yet the estates held by the owner of the mineral rights "by virtue of a reservation in a deed is neither a tenant in common, nor a joint tenant with the owner of the surface; each has a separate estate; each is separately subject to taxation," etc. It is true that the court held that a sale of unseated lands for taxes which were assessed before the severance of the title to the surface from that to the minerals, and a purchase of the whole by the owner of the surface passes a good title to the whole as against the owner of the minerals. But the reason for this holding is very apparent. The owner of the mineral estate did not have his estate assessed and taxed, and therefore it is clear why the sale for taxes which were assessed before the severance of the title to the surface from that to the minerals passed a good title to all of the estate in the land. In view of what is said in that case and the many other decisions of the Supreme Court, we cannot avoid the conclusion that if the owner of the minerals had had his interest severed from the surface and assessed and had paid his taxes before the tax sale, that no title would have passed to his mineral right. We cannot read the able opinion by Mr. Justice FELL and consider the many cases cited by him, and escape the conclusion that mineral estates in unseated lands may be assessed separately from the surface and where the taxes levied on such an assessment are paid, the sale of the land on a surface assessment will not pass title to the mineral estate.

In Delaware & Hudson Canal Co. v. Hughes, 183 Pa. 66, it was said in the opinion of the Supreme Court by Mr. Justice WILLIAMS: "But a grant of all the coal, or of the exclusive right to mine the coal is a sale of the coal in place. The conveyance of the coal creates in the vendee an interest in land.

The deed or other conveyance is within the recording acts, and is subject to all the rules and regulations governing conveyances of the surface." That case further holds that where there is a severance of the coal from the surface by a deed duly recorded it is constructive notice to all the world of the fact of severance. Thenceforward the owner of the soil may cultivate, inclose and reside upon his estate for any length of time, but his possession will not extend below it. It will not grasp nor affect in the slightest degree the estate below him which has been severed by the deed. In like manner the owner of the mineral estate may enter upon and operate it while the owner of the surface is leaving his estate unoccupied and wild, but the possession of the lower estate will not reach upward and attach to the surface. Each estate may be occupied, conveyed, incumbered, sold by the sheriff or allotted in partition, without any effect upon the other. It seems to us clear that this doctrine must apply alike to seated and unseated land.

Byers v. Byers, 183 Pa. 509, is another case recognizing that different estates in land may be held by the severance of the strata horizontally and also that partition may be made of the horizontal or coal strata.

Sanderson v. Scranton, 105 Pa. 469, is a case wherein it does not clearly appear whether the land was seated or unseated, but the first syllabus of the case indicates the trend of the decision on the question we are considering: "Where the surface of lands and the minerals in place thereunder have been severed by the agreement or conveyance of the owner, and the respective divisions have become vested in different owners, the municipal authorities are bound to levy their taxes according to the ownership and value of the divisions. And each owner can be made responsible only for the tax on his interest, whether underlying strata or surface." It is probably fair to infer that the land in question in that case was seated or improved land, but in view of other decisions we think the principle stated includes both seated and unseated lands. That case also holds that "Land has an indefinite extent, upwards as well as downwards, but the law recognizes horizontal divisions of land. A severance of the surface from the underlying strata may be

created, either by reservation or express grant; after severance a mineral right is an independent interest in land, it forms a distinct possession, is held upon a distinct title and is as much the subject of sale, devise or inheritance, and of separate taxation as the surface land."

The learned court below endeavors to explain and distinguish the case of Hutchinson v. Kline, 199 Pa. 564. That case was tried before the late Judge MAYER who had the reputation of being one of the ablest land lawyers in Pennsylvania. The syllabus indicates the trend of the decision: "Where an owner of lands conveys the surface and reserves the minerals, it is his duty to notify the county commissioners of this fact, and if he fails to do so, and thereafter the lands are assessed as to the entire estate as unseated lands, and are sold as such at tax sale, the owner of the surface may purchase at such sale, and acquire good title to the minerals. It is perfectly clear from that case that Judge MAYER was of the opinion that the reserved gas, coal, iron and petroleum in an unseated tract of land created in the grantors a legal estate in such gas, coal, iron, petroleum and rights reserved, which separate and legal estate was and is the subject of distinct ownership and separate taxation. In fact he expressly so said in answer to a point submitted in the case. The real question, however, in that case was similar to that in Powell et al. v. Lantzy, 173 Pa. 543. The owner of the mineral estate did not have his interest separately assessed and therefore he lost his title. The Supreme Court affirmed the judgment of Judge MAYER on his opinion.

One of the prominent contentions of the court below and the counsel for the plaintiffs is that the estate in land created by a grant or reservation of the underlying minerals is not within the meaning of the taxation laws a "tract of land." But we are unable to see that the decisions make any marked distinction between an estate in land and a tract of land. It is common and entirely proper, we think, to speak of a tract of land as an estate or landed estate, and we cannot see why there may not be two or more tracts or estates in the same piece of land caused by horizontal severance. The importance attached to the word "tract" by the learned counsel for the plaintiff has led us to look

at the definition of the word.   It means (1) something drawn out or extended; (2) a region or quantity of land or water of indefinite extent.  Now, the Supreme Court has often said that oil, gas, coal and minerals when severed from the surface by grant or reservation are land.  Therefore, we conclude that there may be a tract of coal or oil and gas, underlying the surface. The whole force of the argument of the learned counsel for the plaintiffs is based on the proposition that unseated land can only be assessed once for a given year and that if sold for non-payment of taxes on such assessment, the title of the real owner passes to the purchaser for the whole body of the land extending to the center of the earth.  It is conceded that no such rule pertains to seated lands.  If we have not already demonstrated, from the decided cases, that oil, gas, coal and other minerals are land while in place, then we refer to the following cases: Westmoreland, etc., Natural Gas Co. v. DeWitt, 130 Pa. 235; Marshall v. Mellon et al., 179 Pa. 371; Funk v. Haldeman, 53 Pa. 229; Gill v. Weston, 110 Pa. 312; Blakley v. Marshall, 174 Pa. 425.  Now, if we have established the proposition that oil and gas are minerals and that a grant or reservation of the same creates an estate in land, then why may not such an estate be assessed and charged with taxes and sold for the nonpayment of the same although the land is unseated?

If minerals reserved in a tract of land or conveyed to another by the owner of the same, who retains the surface, creates an estate in land as has been said time and again by the Supreme Court, then on what theory can the taxing officers refuse to assess and tax a mineral interest in unseated land?  The practice contended for by the court below and counsel for plaintiff is manifestly unfair.  Many tracts of mountain land in Pennsylvania, from which the timber has been removed, have very little value, except for the mineral underlying or supposed to underlie the same.  Now, if the owner sells and conveys the minerals in such a tract and retains the surface for the purpose of, say, trying to raise a new growth of timber thereon, must he be burdened by taxation based upon the value of the tract as mineral land or else lose his title to the surface.  In our opinion, the just rule, as well as the legal one, is to tax such land sepa-

rately, first, on the basis of its surface value, and, second, on its mineral value.

The learned court below cites and attaches importance to the cases of Heft v. Gephart, 65 Pa. 510, and Morton v. Harris, 9 Watts, 319, saying that the most complete review of our system of taxation is by Mr. Justice HUSTON in the latter case. But it is manifest that no such question as we have under consideration was raised or considered by that learned judge. What he was contending for was that an assessment of an unseated tract of land, sufficiently identifying the same, would support a tax sale of the interests of all of the owners of such tract of land. That has been the law ever since and is now, but the doctrine of Martin v. Harris does not reach the case of separate horizontal estates in unseated land created by grant where each estate is separately assessed. In such case we hold that the person who has had his estate properly assessed and who has paid the taxes levied thereon cannot lose his title by a tax sale of the other estate which was also separately assessed and the taxes levied thereon had not been paid.

The assignments of error are sustained and the decree is reversed and the bill dismissed at the costs of the plaintiffs.