## Laws v. Chester

*Margaret A. Lenzi,* for plaintiff.

*John W. Nails, Leo A. Hackett* and *Alvin S. Ackerman,* for defendants.

SURRICK, *J.,* December 12, 1980—The above-captioned matter is presently before this court on defendants' preliminary objections to plaintiff's complaint in mandamus. Plaintiff's complaint alleges that plaintiff is the owner of and presently resides at 1010 West Second Street in the City of Chester, Delaware County, Pa. Plaintiff further alleges that she is disabled and indigent and that her sole source of income is from Social Security Disability Benefits and Veteran's Benefits. She alleges that, due to her indigent status and disability, she is not able to pay various taxes including real estate taxes which had accrued from 1970 until the present time, in the approximate amount of $5,000.

Because of these delinquent taxes, defendant Tax Claim Bureau of Delaware County scheduled plaintiff's property for tax sale. Plaintiff contends that under the Local Tax Collection Law of May 25, 1945, P.L. 1050, as amended, 72 P.S. §5511.37, defendant had the power to exonerate her from taxes owed because of her indigent status. Despite numerous requests by plaintiff that defendants consider her case, the named defendants have

failed and refused to do so. Plaintiff asks the court to order defendants to consider her petitions for exoneration and to establish a timely, efficient and orderly procedure to process both plaintiff's application for exoneration and any similar applications. Plaintiff contends that she has no adequate remedy at law.

Defendants' jointly-filed preliminary objections are in the nature of a demurrer. Defendants claim that plaintiff's complaint fails to state a cause of action in mandamus and that plaintiff has an adequate remedy at law.

The issues raised by these preliminary objections are three in number: (1) Do defendants have the power to exonerate real estate taxes of "indigent persons" under section 37 of the Local Tax Collection Law P. (2) Does a court in a mandamus action have the power to order the exercise of a discretionary act? (3) Does plaintiff in the instant case have an adequate remedy at law under the Act of May 21, 1943, P.L. 349, as amended, 72 P.S. §5566(b).

The section of the Local Tax Collection Law, 72 P.S. §5511.1 et seq., on which plaintiff bases her claim for relief provides as follows, 72 P.S. §5511.37:

"Taxing districts shall at all times make exonerations for uncollectible occupation, poll and per capita taxes, mistakes, indigent persons, unseated lands, deaths, removals, etcetera, as to them shall appear just and reasonable. . . ."

Defendants take the position that the above section does not provide for the exoneration of indigent persons from the collection of real estate taxes. A review of the historical development of the law relating to exonerations is helpful.

The legislature first gave the counties the authority to abate or exonerate taxes of indigent persons in 1799. The Act of April 11, 1799, P.L. 392, provides as follows in section 15:

"And be it further enacted by the authority aforesaid, That the commissioners, or any two of them, shall form a board in each county, and shall issue their warrants with the duplicates, to the respective collectors therein, authorizing and requiring them to demand and receive, of and from every person in such duplicate named, the sum wherewith such person stands charged; and within six weeks from the date of such warrant, the said collectors shall pay all such monies, as they may by that time have received, to the treasurer, at a certain time and place to be mentioned in such warrants, at which time and place the treasurer shall attend; and *the board of commissioners shall, at the same time and place, make abatements or allowances for mistakes, or indigent persons,* after which the collectors shall proceed to demand and receive the remanders of the tax. . . ." (Emphasis supplied.)

The Act of 1799 provides for the levying and collection of taxes including real estate taxes.

In 1834 the legislature used substantially identical language to that contained in the Act of 1799 in giving counties and townships the right to exonerate indigent persons from taxes. The Act of April 15, 1834, P.L. 509, sec. 48, provides as follows:

*"The commissioners of the proper county, and the supervisors and overseers of the poor of the proper township, as the case may be, shall at all times make abatement or exonerations for mis-*

*takes, indigent persons, unseated lands, &c, as to them shall appear just and reasonable,* and the commissioners shall direct their clerks to enter in a book or books, to be kept for that purpose the names of all persons abated or exonerated, together with the reason why, the amount and date, when made, and give to the collector a certificate directed to the county treasurer, stating the nature of the tax, and the amount exonerated, in order to make settlement accordingly, and the same course shall be pursued by the supervisors and overseers of the poor, with respect to exonerations of township rates and levies." (Emphasis supplied.)

The Act of 1834 provides for the levying and collection of taxes including real estate taxes.

In 1864 the power to exonerate indigent persons was extended to school directors. The Act of April 14, 1864, P.L. 419, sec. 4, provides as follows:

"That in assessing, and collecting, said taxes, *said directors shall have power to make such exonerations, and exemptions, as they may deem just, and proper,* and shall have power to appoint such collectors, and issue such warrants, and take such bonds, for the collecting, and safety, of said moneys, as is provided by existing laws, for the assessing and collecting, of state and county taxes, and do all other acts, and things, necessary, in the premises." (Emphasis supplied.)

The Act of 1864 dealt with the power of the school directors to assess, levy and collect taxes including real estate taxes.

In 1910 the Superior Court of Pennsylvania in the case of Walker's Appeal, 44 Pa. Superior Ct. 145 (1910), held that the power to exonerate conferred by section 48 of the Act of 1834 had not been abro-

gated by the Constitution and the Act of 1864 nor had it been abrogated by any subsequent legislation.

Between 1910 and 1945 several acts were passed by the legislature giving the power to exonerate taxes to boroughs, townships of the first class and townships of the second class. These acts reflect exactly the language of the Act of 1834.[1] Moreover, in 1931 cities of the third class were given the right to exonerate taxes "for sufficient cause."[2] It is clear that between 1799 and 1945 the various taxing authorities aforementioned had the power to make exonerations in assessing and collecting taxes for indigent persons including real estate taxes.

In 1945 the Local Tax Collection Law was enacted and, in 1968, it was amended: 72 P.S. §5511.1 et seq. This act governs the collection of taxes, including the real estate taxes with which we are here concerned. The language of section 37, dealing with exonerations, was not changed by the amendment and is as above recited. The question, therefore, becomes whether this act changes the previously existing law as hereinabove outlined. Defendants contend that it does in that the Act of 1945 in section 37 expressly limits its application to "uncollectible occupation, poll and per capita taxes." Defendants reason that because the leg slature specifically failed to mention real estate taxes in this section, it did not intend that exonerations

1. The General Borough Act of May 4, 1927, P.L. 519, 582, sec. 1311; The First Class Township Code of June 24, 1931, P.L. 1206, 1269, sec. 1718; The Second Class Township Law of May 1, 1933, P.L. 103, 146-47, sec. 915.

2. The Third Class City Law of June 23, 1931, P.L. 932, 1022, sec. 2562.

would apply to such taxes but rather would only apply to the three specifically enumerated types of tax. Counsel argues that the Act of May 7, 1929, P.L. 1576, sec. 1, 72 P.S. §5709, relates to general exonerations of tax collectors for the collection of taxes and specifically mentions real estate taxes thus showing a legislative intent to distinguish between the treatment of occupation, poll and per capita taxes on the one hand and real estate taxes on the other.

Defendants further contend that there is another reason to differentiate between these types of taxes. They argue that occupation, poll and per capita taxes are levied upon the taxpayer individually and that when an individual is indigent, it is logical to permit exonerations where such would be fair and reasonable. On the other hand, defendants contend that real estate taxes are levied against the real estate owned by the taxpayer and that this real estate has value. Thus, the taxpayer has an asset out of which the payment of taxes can ultimately be made.

We have reviewed the Local Tax Collection Law of 1945 as amended and find that there are other instances where the legislature treated differently the collection of occupation, poll and per capita taxes and the collection of real estate taxes.[3] These instances, of course, give some credence to defendants' contentions concerning the legislative intent. We are not, however, persuaded that defendants' position is correct.

---

3. See Local Tax Collection Law, 72 P.S. §§5511.18, 5511.19, 5511.20, 5511.20(a), 5511.23, 5511.24.

Initially, we would indicate that a review of section 5511.37 leads us to the conclusion that its language is clear and unambiguous. This section, by its express language, provides that the "taxing districts shall at all times make exonerations for" six different circumstances. These circumstances are (1) uncollectible occupation, poll and per capita taxes, (2) mistakes, (3) indigent persons, (4) unseated lands, (5) deaths, (6) removals, etc. There is nothing in the language or punctuation of the statute which would support the defendants' suggestion that the words "occupation, poll and per capita taxes were meant to limit the categories that followed, to those three specific taxes."[4] Moreover, it has been held that when the particular word or words exhaust the whole genus, the general term will not be regarded as surplusage but will be construed to refer to a larger class: Weiss v. Swift & Company, 36 Pa. Superior Ct. 376 (1908).

Defendants' argument fails for yet another reason. Defendants' reading of the statute would permit the taxing district to make exonerations for mistakes, indigent persons, unseated lands, deaths, removals, etc. only as they relate to the imposition of occupation, poll and per capita taxes. Although such a reading might make sense when dealing with mistakes, indigent persons, deaths and removals, it does not make sense as applied to

---

4. Defendants' argument in this regard, although not so articulated, is derived from the maximum of ejusdem generis which can be found in section 1903(b) of the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1903, and which provides that: "General words shall be construed to take their meanings and be restricted by preceding particular words."

unseated lands.[5] Our Supreme Court has held that taxes on unseated lands are a charge against the land and not against the owner of the land personally: Stokely v. Boner, 10 S. & R. 254 (1823); Fager v. Campbell, 5 Watts 288 (1836); Neill v. Lacy, 110 Pa. 294, 1 Atl. 325 (1885); Albright v. Byers-Allen Lumber Co., 204 Pa. 71, 53 Atl. 648 (1902). Obviously, an exoneration for unseated lands would in and of itself be the exoneration of a tax on real estate. As such, by definition, it would have no relationship whatsoever to occupation, poll or per capita taxes.

Finally, the Statutory Construction Act of 1972, 1 Pa.C.S.A. §1921, provides that where the words of the statute are not explicit, the legislative intent may be ascertained by considering "[t]he former law, if any, including other statutes upon the same or similar subject." 1 Pa.C.S.A. §1921(c)(5). Although we believe the statute is clear as outlined

---

5. Black's Law Dictionary, Revised 4th Edition, West Publishing Company, defines the terms occupation tax, poll tax, per capita tax and unseated lands as follows:

"*Unseated lands.* A phrase used in the Pennsylvania tax laws to describe land which, though owned by a private person, has not been reclaimed, cultivated, improved, occupied, or made a place of residence. . . . A tract of land ceases to be unseated as soon as it is actually occupied with a view to permanent residence.

"*Poll-tax.* A tax of a specific sum levied upon each person within the jurisdiction of the taxing power and within a certain class . . . without reference to his property or lack of it.

"*Occupation tax.* A tax imposed upon an occupation or the prosecution of a business, trade, or profession: not a tax on property, or even the capital employed in the business, but an excise tax on the business itself.

"*Per capita.* By the heads or polls; according to the number of individuals; share and share alike."

above, from 1799 until 1945 the various taxing statutes permitted taxing authorities to make exonerations for real estate taxes. If the legislature had intended to change the law in this regard, it could easily have provided that section 5511.37 did not apply to taxes on real estate. Its failure to do so certainly supports the proposition that it did not intend to change the law which had existed for almost 150 years.

Under all of these circumstances, we are compelled to conclude that defendants do, in fact, have the power to exonerate real estate taxes of indigent persons under section 37 of the Local Tax Collection Law, if they choose to do so.

The issue now becomes whether the court may, in a mandamus action, order defendants to exercise their discretion with regards to the petition for exoneration presented by plaintiff. In School Directors of Bedford Borough v. Anderson, 45 Pa. 388, 390 (1863), this issue was squarely faced and the Supreme Court held that it did not have the power via an application for the writ of mandamus to order the school directors to exonerate the real estate taxes of the taxpayer. The court states as follows:

"This was an unprecedented application of the writ of mandamus. It is not the ordinary official duty of school directors to exonerate taxes, but rather to levy and collect them. If they were backward in the exercise of this official function, mandamus might be used to stir them up. But when they have set themselves in motion, and are proceeding to discharge the duty imposed by law, they are no longer subject to mandamus. Exoneration is a discretionary power incidental to their office, and in this instance would seem to have been exercised by a refusal to grant the relief asked for. We have no

power to control a discretion vested in them, and no appeal lies from them to judicial tribunals."

Nevertheless, plaintiff here is simply requesting that the court order defendants to exercise their discretion which, according to plaintiff's complaint, they have refused to do. Plaintiff is not requesting exoneration from this court but rather that defendants properly give to her the chance to convince them to exercise their discretion in her favor. It has long been the law in Pennsylvania that while mandamus will not lie to order an official to exercise discretionary power in a particular manner, mandamus will lie to order that official to exercise his or her discretion: Taylor v. Abernathy, 422 Pa. 629, 222 A. 2d 863 (1966); Mellinger v. Kuhn, 388 Pa. 83, 130 A. 2d 154 (1957).

The final issue to be decided in relation to the defendants' preliminary objections is whether or not plaintiff has an adequate remedy at law. Defendants cite 72 P.S. §5566(b) to say that plaintiff does, in fact, have such a remedy. That section of the statute would require plaintiff in this instance to pay the disputed taxes and then sue defendants in assumpsit to recover the same. As a practical matter, this particular plaintiff would first have to lose her house to a tax sale in order to earn the right to argue that the taxes for which her house was sold were subject to exoneration. There is a long standing exception to the rule in mandamus that the availability of the statutory remedy eliminates the ability of a court to issue a writ in mandamus. If the statutory remedy would cause plaintiff irreparable harm, then by definition it is not an adequate remedy: Pa. State Chamber of Commerce v. Torquato, 386 Pa. 306, 125 A. 2d 755 (1956); Duquesne Light Co. v. St. Clair Twp., 377 Pa. 323, 105 A. 2d 287

(1954); Wood v. Goldvarg, 365 Pa. 92, 74 A. 2d 100 (1950).

For all if the foregoing reasons, we enter the following

### ORDER

And now, December 12, 1980, upon consideration of defendants' preliminary objections to plaintiff's complaint, it is ordered and decreed that the said preliminary objections be and the same are hereby dismissed.

Defendants are granted leave to file a responsive pleading within 30 days of the date hereof.

Dissenting: Reed and Jerome, JJ. Not participating: Wright, J.